UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ASPIRE HEALTH PARTNERS, INC.,

    Plaintiff,

v.                                        Case No: 6:24-cv-1578-JSS-UAM

ASPIRE MGT LLC,

    Defendant.
_____/

## ORDER

On December 19, 2024, the court granted Plaintiff's motion for preliminary injunction as to its claims of trademark infringement. (Dkt. 51.) Defendant has since appealed that decision, (*see* Dkt. 53), and moves to stay the preliminary injunction pending its appeal, (Dkt. 58). Plaintiff opposes the motion. (Dkt. 61.) Upon consideration, for the reasons outlined below, the motion is denied.

## BACKGROUND

Plaintiff is a Florida not-for-profit corporation that has provided healthcare services within Florida for more than a decade, including "various mental health services, health assessments and screenings, substance detoxification[,] and substance abuse services." (Dkt. 1-1 at 4.) Plaintiff also provides "clinical and pharmaceutical services" and "coordinates other medical care services for its patients," including "arranging for patients to be placed in nursing homes and assisted living facilities." (*Id.*) To conduct its business, Plaintiff maintains a website located at

www.aspirehealthpartners.com. (*Id.* at 11.) Plaintiff holds six Florida trademark registrations, two separate registrations for each of three related marks: ASPIRE HEALTH PARTNERS (Reg. Nos. T19000000125 and T19000000126), ASPIRE HEALTH (Reg. Nos. T19000000185 and T19000000186), and ASPIRE (Reg. Nos. T21000000273 and T21000000274) (collectively, the Aspire trademarks). (*Id.* at 26–108.) For each trademark, Plaintiff holds one registration for use of the mark for providing case management services, such as coordinating medical, behavioral, and social services, and another registration for use of the mark for a broader range of health services, especially those related to substance abuse and mental health treatment. (*See id.* at 5–10.)

Defendant is a Florida limited liability company that has acquired dozens of skilled nursing facilities throughout Florida. (Dkt. 51 at 2 & n.1; Dkt. 54 at 136–40.) Defendant spent roughly $1.2 billion to acquire its Florida facilities. (Dkt. 54 at 141.) Defendant states that it offers nursing home and post-acute care services under the trademark ASPIRE HEALTH GROUP and through its website, located at www.aspirehealthgrp.com. (Dkt. 28 at 6.)

Plaintiff alleges that Defendant's use of a confusingly similar mark and website resulted in several "documented . . . instances of actual confusion." (Dkt. 1-1 at 13; *see* Dkt. 51 at 3–4.) The first instance that Plaintiff reported occurred on March 4, 2024. (Dkt. 1-2 at 36.) After experiencing several more instances of confusion between its and Defendant's marks, culminating in a misdirected phone call from the

Occupational and Health Safety Administration that concerned the failure to timely file a report and was intended for Defendant, (*id.* at 51–52), Plaintiff sued.

Specifically, Plaintiff filed a motion for a temporary injunction in the Ninth Judicial Circuit Court of Florida. *See Aspire Health Partners, Inc. v. Aspire MGT LLC*, No. 2024-CA-006784-O (Fla. Cir. Ct. July 30, 2024). Defendant subsequently removed the case to this court. (Dkt. 1.) Plaintiff then moved this court to enjoin Defendant "from the acts of trademark infringement . . . and cybersquatting . . . referenced in the [v]erified [c]omplaint." (Dkt. 16 at 1.) The court held an evidentiary hearing on the motion. (Dkt. 47.)

In its briefing in advance of that hearing, Defendant did not dispute the validity of Plaintiff's marks. (*See* Dkt. 28.) The test for trademark infringement under Florida law required Plaintiff to demonstrate "(1) that its mark[s] ha[ve] priority, and (2) that [Defendant]'s mark is likely to cause consumer confusion." *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 91 F. Supp. 3d 1265, 1274, 1288 (S.D. Fla. 2015); *see FCOA LLC v. Foremost Title & Escrow Servs. LLC*, 57 F.4th 939, 946 (11th Cir. 2023) ("For a trademark infringement claim, a plaintiff must demonstrate (1) that it owns a valid mark with priority, and (2) that the defendant's mark is likely to cause consumer confusion with the plaintiff's mark."). Defendant, however, did not address the priority or validity of Plaintiff's trademarks and instead analyzed only the second issue, whether Plaintiff had demonstrated a likelihood of consumer confusion. (*See* Dkt. 28 at 9.) Though it made conclusory statements that Plaintiff's marks were "too weak to be trademarked," its argument was only that Plaintiff's marks were "weak" such that

one factor involved in the likelihood of confusion analysis, the strength of the marks, "favor[ed] Defendant." (*Id.* at 10–12.) Accordingly, the court did not examine the validity of the Aspire trademarks in detail but instead "proceed[ed] only under the likelihood of confusion analysis." (Dkt. 51 at 6–7.) Similarly, while the parties briefed the issue of whether a presumption of irreparable harm attaches once a plaintiff has demonstrated a likelihood of success on the merits of its trademark infringement claim, (Dkt. 16 at 15–16; Dkt. 28 at 17), neither party addressed the presumption of validity enjoyed by a mark registered under Florida's trademark system. *See Fla. Van Rentals, Inc. v. Auto Mobility Sales, Inc.*, 85 F. Supp. 3d 1300, 1307 (M.D. Fla. 2015).

After carefully considering the facts adduced at the hearing, the court determined that Plaintiff had satisfied its burden as to its claims of trademark infringement. Accordingly, the court granted Plaintiff's motion for a preliminary injunction as to those claims but denied the motion as to the cybersquatting claim. (Dkt. 51.) Defendant now moves to stay the injunction pending an appeal to the Eleventh Circuit. (Dkt. 58.)

## APPLICABLE STANDARD

A party seeking to stay an order pending appeal must establish four elements: (1) that "the stay applicant has made a strong showing that he is likely to succeed on the merits" of the appeal; (2) that "the applicant will be irreparably injured absent a stay," (3) that "issuance of the stay will [not] substantially injure the other parties interested in the proceeding," and (4) that "the public interest" favors a stay. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Because "this test is so similar to that applied

when considering a preliminary injunction, courts rarely stay a preliminary injunction pending appeal." *Wood v. Fla. Dep't of Educ.*, 729 F. Supp. 3d 1255, 1290 (N.D. Fla. 2024); *accord Honeyfund.com, Inc. v. DeSantis*, 622 F. Supp. 3d 1159, 1186 (N.D. Fla 2022) ("Considering that th[e test to stay a preliminary injunction] is so similar to that applied when considering a preliminary injunction, courts rarely stay a preliminary injunction pending appeal.")

## ANALYSIS

### A. Likelihood of Success on the Merits

The first issue is whether Defendant has established a substantial likelihood that it will succeed on the merits of its appeal. *See Hilton*, 481 U.S. at 776. Defendant argues that it is likely to succeed on appeal because (1) the court determined that Plaintiff's trademarks are merely descriptive without secondary meaning and, as such, they are not valid, protectable marks and (2) the court's reliance on Plaintiff's proffered examples of actual confusion was in error. (*See* Dkt. 58 at 5–10.) The court considers each argument in turn.

#### 1. Plaintiff's Trademarks Are Valid and Protectable

In the order granting Plaintiff's motion for preliminary injunction, the court determined that Plaintiff's trademarks were laudatorily descriptive. (*See* Dkt. 51 at 15–16.) Because the court determined that Plaintiff made an inadequate showing as to secondary meaning, the court found its marks to be merely descriptive without secondary meaning and thus relatively weak. (*See id.* at 16–20.) Defendant argues that

Plaintiff's marks are thus unprotectable and that the court erred in determining that Plaintiff was likely to succeed on the merits of its trademark infringement claim. (*Id.* at 20.) However, in reaching the conclusion about secondary meaning, the court was considering the strength of the marks, not the validity of the marks. (*See id.* at 6 ("Defendant does not contend that Plaintiff lacks priority in its mark but rather that Plaintiff has not established that Defendant's use of the mark in commerce creates a likelihood of confusion. Accordingly, the court will proceed only under the likelihood of confusion analysis." (citations omitted)).) Plaintiff notes the same in its opposition to the motion. (*See* Dkt. 61 at 2 ("Defendant fails to address its acquiescence to the presumed validity of [Plaintiff]'s marks, which was never at issue in the pleadings or at the hearing because Defendant never rebutted the statutory presumption of validity they enjoy from Florida registrations.").) Nonetheless, contrary to Defendant's argument, Plaintiff's marks are valid.

As the court previously explained, "Plaintiff's Florida trademark registrations constitute 'prima facie evidence of the validity of the registration.'" (Dkt. 51 at 6 (quoting Fla. Stat. § 495.061).) *Accord Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1023 (11th Cir. 1989). Florida trademark registration affords the mark holder "a presumption that the mark is not merely descriptive or generic, or, if merely descriptive, is accorded secondary meaning." *Fla. Van Rentals*, 85 F. Supp. 3d at 1307 (quotation omitted). Courts construing a substantially identical provision under the Lanham Act, 15 U.S.C. § 1057(b), have reached the same conclusion. *See Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989, 1004 (11th

Cir. 2021) ("When a mark has been registered with the [Patent and Trademark Office (PTO)], there is a rebuttable presumption that the mark[] [is] protectable or distinctive." (quotation omitted)); *see also* Fla. Stat. § 495.181 ("The intent of this chapter is to provide a system of state trademark registration and protection substantially consistent with the federal system of trademark registration and protection under the Trademark Act of 1946, as amended.  To that end, the construction given the federal act should be examined as persuasive authority for interpreting and construing this chapter."). Accordingly, Plaintiff is entitled to a presumption that its Aspire trademarks are valid,[1] and the burden was on Defendant to "overcome the presumption of validity by showing—by a preponderance of the evidence—that the mark[s] [are] *not* distinctive." *Pinnacle*, 7 F.4th at 1005 (quotation omitted).

Plaintiff, with the benefit of significantly expanded briefing on the issue, contests the court's prior determination that its marks are merely descriptive, but

---

[1] Under *Florida Van Rentals*, Plaintiff may be entitled to both presumptions.  *See* 85 F. Supp. 3d at 1307 ("[A plaintiff] is afforded a presumption that the mark is not merely descriptive or generic, or, if merely descriptive, is accorded secondary meaning." (quotation omitted)).  The Eleventh Circuit in *Pinnacle*, however, considering marks registered with the PTO, clearly stated that the registrant is entitled to either a presumption that the registered mark is inherently distinctive or that it has acquired distinctiveness, not both. *Pinnacle*, 7 F.4th at 1005 ("[T]rademark holders are never entitled to presumptions of *both* 'inherent' *and* 'acquired' distinctiveness—they get only one or the other." (quotation omitted)).  To which presumption the federal registrant is entitled depends on whether the PTO required proof of secondary meaning during the registration process—if not, a presumption that the mark is inherently distinctive attaches.  *See Royal Palm Props., LLC v. Pink Palm Props., LLC*, 950 F.3d 776, 784 (11th Cir. 2020).  If the PTO required proof of secondary meaning, then the presumption is that the mark has acquired distinctiveness by obtaining secondary meaning.  *Id.*  However, the parties have not identified, nor has the court found, any cases discussing whether this analysis applies to trademarks issued under Florida's trademark system or, if it does, how it maps onto that system.  Because the court found that Plaintiff's Aspire trademarks are laudatory and thus merely descriptive, Plaintiff is entitled to a presumption of secondary meaning.

argues that the grant of the injunction was nonetheless correct. (*See* Dkt. 61 at 11–17.) The court previously found that Plaintiff's trademarks are merely descriptive. (*See* Dkt. 51 at 15–16.) In holding that Plaintiff's marks are laudatorily descriptive, the court compared the Aspire trademarks to three other marks that had previously been so categorized: "foremost," "popular," and "pinnacle." (*See id.* at 16.) *See FCOA*, 57 F.4th at 951 ("Here, 'Foremost' is a descriptive mark, a self-laudatory term meaning the best."); *Popular Bank of Fla. v. Banco Popular de P.R.*, 9 F. Supp. 2d 1347, 1357 (S.D. Fla. 1998) ("[T]he [c]ourt finds that the trademark Popular Bank of Florida consists of the laudatory word 'Popular' joined with the commercially descriptive word 'Bank' and the geographically descriptive term 'of Florida.' Thus, taken as a whole, 'Popular Bank of Florida' is a descriptive mark."); *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, No. 18-CV-81606-MIDDLEBROOKS, 2019 WL 7838303, at *2 (S.D. Fla. Oct. 2, 2019) ("[T]he term 'pinnacle' appears to be a merely laudatory term describing the quality of advertising and marketing services provided by the [p]arties."); *see also Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 728 (7th Cir. 1998) ("agreeing with the district court's conclusion that 'platinum' is a 'self-laudatory term' and that Platinum Mortgage is a merely descriptive trade name" because "'platinum' describes the quality of plaintiff's mortgage services and suggests that it provides a superior service[] but . . . does not identify one particular source or designate the specific origin of those services without proof of secondary meaning"). The court found that the Aspire trademarks were similar to these in that they "extol[] some feature or attribute of" Plaintiff's products or services. *Uber Promotions, Inc. v.*

*Uber Techs., Inc.*, 162 F. Supp. 3d 1253, 1267 (N.D. Fla. 2016) (quoting 2 McCarthy on Trademarks and Unfair Competition § 11:17, Westlaw (4th ed., database updated Dec. 2015)).

The court was particularly persuaded by the Eleventh Circuit's determination in *FCOA* that the mark at issue there, "Foremost," was "a descriptive mark," because it was "a self-laudatory term meaning the best." 57 F.4th at 951. Plaintiff attempts to distinguish its trademarks because "aspire" is a verb and therefore "cannot directly modify [Plaintiff]'s services," whereas adjectives like "foremost" "can be used as direct modifiers of goods or services, thus obviating a 'mental leap' to get from the word to the good or service." (*Id.* at 12–13.) Though the court appreciates the distinction, Plaintiff cites to no legal authority to support it. (*See id.*) The caselaw supports that laudatory terms are "those that attribute quality or excellence to goods or services" regardless of their grammatical classification. *Pinnacle*, 2019 WL 7838303, at *2. Indeed, the Southern District of Florida has previously determined that "pinnacle," a noun, "appear[ed] to be a merely laudatory term describing the quality of [the parties'] . . . services." *Id.* Though Plaintiff disagrees with that court's analysis, the court finds *Pinnacle* to be persuasive. The caselaw mirrors the court's analysis of the Aspire trademarks in its prior order. (*See* Dkt. 51 at 15 ("The Aspire trademarks . . . connect[] the medical services offered by Plaintiff with the word 'aspire,' which, in this context, most likely means 'to seek to attain or accomplish a particular goal,' and '[to] ascend, [to] soar.'" (quotation omitted)).)

Accordingly, Plaintiff's marks are merely descriptive, but they are entitled to a presumption of secondary meaning. *See Ice Cold Auto Air of Clearwater, Inc. v. Cold Air & Accessories, Inc.*, 828 F. Supp. 925, 934 (M.D. Fla. 1993) ("Although the [c]ourt rejects [the plaintiff]'s argument that the marks are suggestive, [it] is still entitled to a presumption that the marks are descriptive with secondary meaning."). Because Defendant has not addressed this presumption, (*see* Dkts. 28, 58), the court cannot find that it has satisfied its burden to rebut the presumption. *See Engineered Tax Servs., Inc. v. Scarpello Consulting, Inc.*, 958 F.3d 1323, 1328 (11th Cir. 2020) (explaining that because the plaintiff's mark was registered, it "had no burden to come forward with any affirmative evidence that its mark was inherently distinctive," and that "to the contrary, [the defendant] had the burden to prove otherwise" (quotation omitted)); *Proccor Pharms., Inc. v. World Health Prods., LLC*, No. 8:22-cv-2227-SDM-SPF, 2024 WL 3758013, at *10 (M.D. Fla. July 3, 2024) ("Th[e invalidity of the mark] is a factual issue that [the d]efendants, by operation of the presumption, bear the burden of proving."), *report and recommendation adopted by* 2024 WL 4604152 (M.D. Fla. Sept. 18, 2024); *see also Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."), *overruled in part on other grounds by United States v. Durham*, 795 F.3d 1329, 1331 (11th Cir. 2015) (en banc) ("The only rule affected is the rule concerning the effect of a failure to raise a claim or theory in the opening brief that a party files where that claim or theory is based on an intervening Supreme Court decision."). To analyze this issue on behalf of Defendant would be to flip the adversarial process on its head.

*See Herman v. Mr. Cooper Grp. Inc.*, 2:23-cv-948-JES-KCD, 2024 WL 3277021, at *1 (M.D. Fla. July 2, 2024) ("In our adversarial system, a claimant must present [its] case. It is not a court's job to conduct research to provide the proper support for conclusory arguments." (alteration adopted and quotation omitted)).

Moreover, the Eleventh Circuit can affirm this court's judgment "on any ground supported by the record." *Mata Chorwadi, Inc. v. City of Boynton Beach*, 66 F.4th 1259, 1263 (11th Cir. 2023); *see United States v. Cotton*, No. 21-10612, 2022 WL 176992, at *1 (11th Cir. Jan. 20, 2022) ("We may affirm the district court's injunction on any ground that appears in the record."). The Eleventh Circuit may concur with Plaintiff's argument that its Aspire trademarks are inherently distinctive. Such a development would not only support the marks' validity but would also support the court's finding in its prior order that Plaintiff had demonstrated a likelihood of confusion, as the strength of the mark factor under the likelihood of confusion analysis would then favor Plaintiff. In any event, Defendant has not established a substantial likelihood of success on the merits of its appeal.

### 2. Plaintiff Adduced Evidence of Actual Confusion

Defendant argues that the court "erroneously relied on Plaintiff's evidence of actual consumer confusion" based on its argument that this factor only considers "evidence that consumers were actually confused." (Dkt. 58 at 8–9 (emphasis and quotation omitted).) The court considered this issue and determined to the contrary. (*See* Dkt. 51 at 8–14.) For the same reasons the court already outlined in its prior order, the court rejects this argument. (*See id.*)

Defendant also argues that the "single instance of alleged consumer confusion" that the court considered, the March 4, 2024 email from a resident complaining about the quality of the food served at Beneva Lakes, was not shown to refer to Defendant and was only connected to Defendant by "Plaintiff's unilateral statement" that this resident appeared to be trying to contact Defendant. (*See* Dkt. 58 at 9–10; Dkt. 51 at 10 (quoting Dkt. 17-5 at 1–2).) This argument is unavailing. The email's subject line references "Beneva Lakes." (*See* Dkt. 17-5.) In his declaration submitted with Plaintiff's motion for a preliminary injunction, Todd Dixon, Plaintiff's Associate Vice President of Development and Community Relations, stated that Plaintiff does not operate any facility at Beneva Lakes, but that it was his "understanding" that "Defendant does maintain a facility at that location." (Dkt. 17 at 3–4.) At the hearing, Dixon credibly testified that upon receiving this email, he conducted an internet search and discovered that there is a facility at Beneva Lakes that is "linked to" Defendant. (Dkt. 54 at 90.) This discovery, in conjunction with the fact that Defendant is operating facilities with the same name as Plaintiff, led Dixon to conclude that the sender of the email was one of Defendant's residents, (*see id.*), which the court found persuasive. Thus, the evidence supports that the email refers to Defendant.

Accordingly, Defendant has not satisfied its burden to show that it is likely to succeed on the merits of its appeal. For this reason, the court denies its motion. *See In re Lickman*, 301 B.R. 739, 742 (Bankr. M.D. Fla. 2003) ("The movant must show satisfactory evidence on all four criteria, and the failure to satisfy one prong is fatal to

the motion." (quotation omitted)). However, the court will briefly address the remaining elements.

### B. Irreparable Injury Absent a Stay

Defendant must show that it will be "irreparably injured absent a stay." *Hilton*, 481 U.S. at 776. Defendant argues that it will suffer irreparable injury absent a stay of the preliminary injunction because it would have to "incur substantial expenses and time required to rebrand its entire business." (Dkt. 58 at 10.) This argument is unavailing. "Binding precedent establishes the general proposition that injuries in terms of money, time[,] and energy necessarily expended in the absence of a stay are not irreparable." *United Paperworks Int'l, Local No. 395 v. ITT Rayonier, Inc.*, 752 F. Supp. 427, 431 (M.D. Fla. 1990) (collecting cases). Moreover, as the court previously determined, Defendant will "suffer no legitimate harm since the preliminary injunction . . . only prevent[s] [it] from using marks which [it] [is] not entitled to use." (Dkt. 51 at 36 (quoting *Clayton v. Howard Johnson Franchise Sys., Inc.*, 730 F. Supp. 1553, 1561–62 (M.D. Fla. 1998)).) Accordingly, Defendant has failed to show that it will be subject to irreparable injury absent a stay.

### C. Substantial Injury

Defendant must show that a stay will not "substantially injure the other parties interested in the proceeding." *Hilton*, 481 U.S. at 776. Defendant maintains that a stay in this case is "unlikely to meaningfully affect Plaintiff's interests," pointing to the fact that Plaintiff delayed in seeking a preliminary injunction. (Dkt. 58 at 11–12.) Once again, the court considered this issue at length in its prior order. (*See* Dkt. 51 at

31–35.)  It noted that Plaintiff waited "nearly five months" after it became aware of the existence of alleged confusion and that "[a] delay in seeking a preliminary injunction of . . . only a few months—though not necessarily fatal—militates against a finding of irreparable harm." (*Id.* at 34 (quoting *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016)).)  However, delays in seeking an injunction can be overcome if adequately explained, and Plaintiff provided an adequate explanation for its delay.  (*See id.* at 35.)  *See Advanced Commc'n Design, Inc. v. Premier Retail Networks, Inc.*, 46 F. App'x 964, 984 (Fed. Cir. 2002) ("[Courts] excuse delayed requests for Rule 65 relief when . . . the movant has offered a good explanation for th[e] delay." (quotation omitted)).

Further, Plaintiff may still be entitled to a presumption of irreparable injury.  (*See* Dkt. 51 at 32 (noting that the existence of this presumption is unclear in the wake of *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)).)  In addition, "per se presumptions aside, the harm inflicted by trademark infringement, generally speaking, has no adequate remedy at law and is therefore irreparable such that an injunction is appropriate."  (*Id.*; *see also id.* at 33 (quoting *Uber Promotions*, 162 F. Supp. 3d at 1262).)  Defendant has therefore failed to carry its burden to show that a stay of the preliminary injunction would not substantially injure Plaintiff.

### D. The Public Interest

"In analyzing th[e] final factor [of where the public interest lies], courts focus on whether the stay would promote the uniformity of the laws or the interests of third parties." *In re Freedom Unlimited*, 489 F. Supp. 3d 1328, 1339 (S.D. Fla. 2020).

Defendant contends that the public would be "disserved by wrongfully restraining the lawful business practices of a well-established company" and by "having competition in the nursing home market reduced and thus having a viable alternative expunged." (Dkt. 58 at 12.) The court has already considered this argument and found that an injunction in this case would serve the public interest because "the public deserves not to be led astray by the use of inevitably confusing marks." (Dkt. 51 at 37 (quoting *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008)).) Moreover, the injunction in this case still leaves Defendant "free to offer its services—it [is] only . . . enjoined from violating Plaintiff's rights in its trademarks." (*Id.*) The court therefore determines that Defendant has failed to satisfy this prong.

## CONCLUSION

The court finds that Defendant has failed to carry its burden as to any of the four factors involved in this analysis. Accordingly, Defendant's motion (Dkt. 58) is **DENIED**.

**ORDERED** in Orlando, Florida, on February 12, 2025.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record