UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ASPIRE HEALTH PARTNERS, INC.,

    Plaintiff,

v.                                                     Case No: 6:24-cv-1578-JSS-UAM

ASPIRE MGT LLC,

    Defendant.
_____/

## **ORDER**

The parties have filed a Joint Motion for Entry of Consent Judgment and Permanent Injunction, (Dkt. 78), notifying the court that they have reached an agreement to settle this matter. As part of that settlement agreement, they seek entry of the stipulated Consent Judgment and Permanent Injunction attached to their motion. (*Id.*) Upon consideration, for the reasons that follow, the court grants the joint motion.

Federal Rule of Civil Procedure 65 requires "[e]very order granting an injunction" to "state the reasons why [the injunction] issued," "state [the] terms [of the injunction] specifically," and "describe in reasonable detail—and not by referring to [a] complaint or other document—the act or acts restrained or required" by the injunction. Fed. R. Civ. P. 65(d)(1). "The [c]ourt issues the injunction set forth below because [Defendant] has consented to its terms and because its issuance obviates the need for any further litigation." *See Sec. & Exch. Comm'n v. Rivers*, 272 F.R.D. 607, 608

(M.D. Fla. 2011) (citing *Chathas v. Local 134 Int'l Bhd. of Elec. Workers*, 233 F.3d 508, 513 (7th Cir. 2000)). "The [c]ourt additionally finds that the terms of the injunction are set forth with specificity and that the acts restrained or required are described in sufficient detail to 'apprise those within its scope of the conduct that is being proscribed.'" *See id.* (quoting *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1185 (11th Cir. 2010)). In addition, "[d]istrict courts should approve consent decrees so long as they are not unconstitutional, unlawful, unreasonable, or contrary to public policy." *Stovall v. City of Cocoa*, 117 F.3d 1238, 1240 (11th Cir. 1997) (quotation omitted). Upon review of the parties' Consent Judgment and Permanent Injunction, the court finds that it is not unconstitutional, unlawful, unreasonable, or contrary to public policy. (*See* Dkt. 78 at 4–14.)

Accordingly:

1. The parties' joint motion (Dkt. 78) is **GRANTED**.
2. Any pending motions are **DENIED as moot** and the Clerk is **DIRECTED** to terminate all deadlines and to close this case.
3. The Clerk is **further DIRECTED** to enter final judgment in favor of Plaintiff and against Defendant, and to furnish copies of this Order to the Clerk of the United States Court of Appeals for the Eleventh Circuit for consideration in the appeal of this matter, case number 25-10135.
4. The court retains jurisdiction to enforce the Consent Judgment and Permanent Injunction below.

5. The following Consent Judgment and Permanent Injunction is **ENTERED**:

## CONSENT JUDGMENT AND PERMANENT INJUNCTION

Plaintiff, Aspire Health Partners, Inc. ("Aspire") and Defendant, Aspire MGT LLC ("AML"), (collectively "the Parties") hereby stipulate to the entry of a Consent Judgment and Permanent Injunction as follows.

1. Aspire is a Florida Not-for-Profit corporation with a principal place of business at 5151 Adanson Street, Orlando, FL 32804.

2. AML is a Florida Limited Liability Company with an address of 338 Whitesville Road, Jackson, NJ 08527.

3. Aspire filed a state court action against AML on July 30, 2024, for trademark infringement, unfair competition, and cybersquatting. (Dkt. 1-1.) The state court action sought to enforce Aspire's trademarks for ASPIRE, ASPIRE HEALTH, and ASPIRE HEALTH PARTNERS as used in connection with a wide variety of health care services. The foregoing marks are protected by common law rights in addition to the following six Florida State Trademark Registrations: T19000000125; T19000000126; T19000000185; T19000000186; T21000000273; and T21000000274. (Dkt. 1-1 at Exs. A-F.)

4. Aspire asserts the Aspire Marks are infringed by AML's use of ASPIRE, ASPIRE HEALTH, and ASPIRE HEALTH GROUP as used in connection with health care services, including nursing home and post-acute care services.

5. AML removed the state court action to this court via a Notice of Removal filed on August 29, 2024. (Dkt. 1.) Following the Notice of Removal, Aspire

filed its Motion for Preliminary Injunction. (Dkt. 16.) AML opposed Aspire's motion. (Dkt. 28.)

6.   Following an evidentiary hearing, the court granted, in part, Aspire's Motion for Preliminary Injunction. (Dkt. 51.) In its order, the court noted that Aspire had presented significant evidence of actual and ongoing confusion among the consuming public as a result of AML's use of its marks.

7.   In view of this confusion, this court hereby grants a permanent injunction, as set forth below, enjoining and restraining AML and its Affiliates, officers, directors, agents, servants, and employees from directly or indirectly engaging in the acts of trademark infringement detailed in the Verified Complaint. (Dkt. 1-1.)

**ACCORDINGLY:**

1.   "**Accused Marks**" shall mean "the wordmarks, 'Aspire,' 'Aspire Health,' and 'Aspire Health Group,' and the AML Design, as such marks are used by AML alone or in combination with other terms or marks, including as used in any web domain name, business entity name, fictitious name (such as a d/b/a), AML Websites, signage, advertising, promotion, license, registration, or similar document, official record, or the like and any trademarks, including wordmarks, designs or logos, used by any AML Party that are a colorable imitation of or are confusingly similar to 'Aspire,' 'Aspire Health,' and 'Aspire Health Partners.'"

2.   "**Affiliate**" shall mean, with respect to a Party, "any entity that directly or indirectly owns or controls, is owned or controlled by; or is under common ownership or control with the Party; and the Party's predecessors, successors,

successors-in-interest, and assigns." As used in this definition, "ownership" and "control" mean: "i) possession, or the right to possession, of at least 50% of the voting stock of the entity; ii) the power to direct the management and policies of the entity; iii) the power to appoint or remove a majority of the board of directors of the entity; or iv) the right to receive 50% or more of the profits or earnings of the entity." For clarity, after an entity is transferred from the control of AML or any AML Affiliate, AML will not be responsible for acts by the transferred entity. If any AML Party transfers ownership or control that removes an entity from being an Affiliate under this definition, the AML Party shall notify the transferee of such ownership or control of this Consent Judgment and Permanent Injunction and its obligations.

3. "**AHCA**" shall mean "the Florida Agency for Health Care Administration."

4. "**AML Affiliate**" shall mean "any AML Affiliate that does, or may in the future, operate any skilled nursing facility or health care facility in Florida or Georgia or otherwise do business in Florida or Georgia, engage in Business Registration, or advertise, promote, or publicly operate in relation to Healthcare in Florida or Georgia."

5. "**AML Design**" shall mean "the following design mark used by AML or any AML Party:  ."

6. "**AML Party**" shall mean "AML or any AML Affiliate."

7. "**AML Phone Number**" shall mean "a phone number corresponding to a phone line that i) is actively monitored and answered by an employee or representative of an AML Party during normal business hours; and ii) is set up with a voicemail inbox and a recorded greeting as required by AHCA regulations."

8. "**AML Websites**" shall include "www.aspirehealthgrp.com and any other website, webpage, web domain, social media page, social media handle, e-mail domain, e-mail server, mobile application, other online presence or account, or the like owned or operated by an AML Party."

9. "**Aspire Design**" shall mean "the following design mark used by Aspire:

[ASPIRE HEALTH PARTNERS logo], including the swirl design element and color choices and combinations."

10. "**Aspire Marks**" shall mean: "i) the wordmarks ASPIRE, ASPIRE HEALTH, and ASPIRE HEALTH PARTNERS as identified in Florida State Trademark Registration Numbers T19000000125; T19000000126; T19000000185; T19000000186; T21000000273; and T21000000274; ii) the Aspire Design ; iii) any and all common law trademark rights associated with these marks in Aspire's business; and iv) any colorable imitation or confusingly similar variation of the Aspire Marks, including, without limitation, due to any common design element or color scheme."

11. "**Aspire Services**" shall mean "behavioral healthcare services, the services identified in the Florida State Trademark Registration Numbers

T19000000125; T19000000126; T19000000185; T19000000186; T21000000273; and T21000000274; and all other services and goods provided by Aspire using the Aspire Marks."

12. "**Business Registration**" shall mean "any application or filing for, or maintenance of, a license, approval, record, document, status, or the like required for or relating to conducting business in Florida or Georgia; application or filing for, or maintenance of, any records publicly available through Florida or Georgia, including through the Florida or Georgia Secretary of State, the Florida Division of Corporations or Georgia Corporations Division, and Sunbiz.org or Georgia's ecorp.sos.ga.gov; or like official actions required to operate or conduct business in Florida or Georgia; or application or filing for, or maintenance of, a license, approval, record, document, status, or the like from or through AHCA or HFRD."

13. "**Central Florida**" shall mean "the certain counties of Florida: Seminole, Orange, Osceola, Brevard, Lake, Polk, and Volusia."

14. "**Florida**" shall mean "the State of Florida."

15. "**Georgia**" shall mean "the State of Georgia."

16. "**Healthcare**" shall mean and include "Aspire Services and related goods and services; subacute, short-term, and long-term healthcare; skilled nursing and the operation of a skilled nursing facility or assisted living facility; subacute rehabilitation; therapy, occupational therapy, rehabilitation, physical therapy; medication management; and behavioral healthcare services."

17. "**HFRD**" shall mean "the Healthcare Facility Regulation Division of the Georgia Department of Community Health."

18. "**SEO**" shall mean "search engine optimization, including, respecting a website or webpage, any efforts or methods to increase or enhance the ability of search engines, for example and without limitation, Google, to detect, crawl, record, document, memorialize, recommend, redirect, or otherwise direct attention to the website or webpage."

19. AML Parties are permanently enjoined from all use of the Accused Marks and Aspire Marks in Florida and Georgia and in connection with Business Registration, and Healthcare offered, provided, advertised, accessed or made available in or to Florida or Georgia, in accordance with the deadlines outlined below. AML Parties are permanently enjoined, in accordance with the deadlines below, from any and all uses of the Accused Marks and Aspire Marks in Florida or Georgia or uses of the Accused Marks or Aspire Marks in any offerings, advertisements, services or uses directed to or accessible within Florida or Georgia: i) as any entity name, trade name, or fictitious name (such as a d/b/a) in Florida or Georgia; ii) in or with any application or registration for a license or regulatory approval, with any Florida or Georgia state or local registration or license or other local, state, or federal registration or license that affects or is publicly facing for any business or operation in Florida or Georgia; and iii) otherwise in connection with Business Registration, or Healthcare offered, provided, advertised, accessed or made available in or to Florida or Georgia.

a. **<u>Final Deadline</u>**. No later than **<u>October 2, 2025</u>**, AML Parties shall completely, permanently, and forever cease and desist from any and all uses of the Accused Marks or Aspire Marks in connection with any Business Registration or Healthcare offered, provided, advertised, accessed or made available in or to Florida or Georgia, and all other uses in Florida and Georgia. Such uses include those uses in Florida or Georgia in or on the following: all AML Parties' business entity names, trade names and fictitious names, AML Websites, indoor and outdoor signage, banners, advertisements, and promotional media and materials in any and all media and formats; promotional merchandise; business cards, stationery, letterhead; ID badges; all verbal identifications (such as answering telephones), and online and offline directories and databases.

b. **<u>Website Deadline</u>**. As soon as practicable, and no later than **<u>May 27, 2025</u>**, AML Parties shall completely, permanently, and forever cease and desist from any and all uses of the Accused Marks or Aspire Marks in connection with any and all AML Websites that offer, provide, advertise, or promote services or direct business to Florida or Georgia or are directed or accessible to consumers in Florida or Georgia, including in any domain names, URLs, metadata, keywords, and the like; provided however that references on webpages to AML facilities within Central Florida may remain on AML Websites in accordance with the Central Florida Deadline, and references on webpages to AML facilities outside

Central Florida may remain on AML Websites in accordance with the Final Deadline. AML Parties shall not conduct or maintain SEO based on the Accused Marks or Aspire Marks with respect to any AML Websites or any AML facilities after the Website Deadline.

c. **AML Contact Information**. AML Parties shall, beginning upon issuance of this Consent Judgment and Permanent Injunction and until **October 2, 2026**, prominently feature an AML Phone Number on all AML Websites, including at the top of homepages of such websites. AML Parties shall ensure that any such AML Phone Number is immediately visible to visitors of a webpage upon initial landing and without the need to scroll.

d. **Central Florida Deadline**. No later than **August 2, 2025**, AML Parties shall completely, permanently, and forever cease and desist from any and all uses of the Accused Marks or Aspire Marks in connection with any and all facilities of AML Parties, which facilities operate and do business in Central Florida, such uses including, for example and without limitation, all uses in or on Healthcare, Business Registration, AML Websites (including any domain name, URLs, metadata, and keywords) indoor and outdoor signage, banners, advertisements, and promotional materials and media in all formats; promotional merchandise; business cards, letterhead, stationery, ID badges, and all verbal identifications

(such as answering telephones), and online and offline directories and databases.

e. **Exemption for New Jersey Entity**. AML is affiliated with a Delaware entity doing business in New Jersey, Aspire Health Group, LLC, with a business address of 338 Whitesville Road, Jackson, NJ 08527, ("NJ Entity"). Notwithstanding anything to the contrary in this Consent Judgment and Permanent Injunction, AML is explicitly permitted to retain "Aspire Health" in the name of the NJ Entity, provided however: i) the NJ Entity shall not operate any webpage, web domain, social media page, social media handle, mobile application, other online presence or account that uses "Aspire" alone or in any combination as a brand or trademark for a period of twelve (12) months following entry of this Consent Judgment and Permanent Injunction; ii) AML Parties shall not cause the NJ Entity to conduct any business in or file any documents with Florida or Georgia or otherwise engage in Business Registration; iii) the NJ Entity shall not operate a website that 1) uses Aspire, Aspire Health or any other Aspire Mark; 2) offers or provides Healthcare; and 3) is accessible in or directed to consumers in Florida or Georgia; and iv) the NJ Entity shall not use "Aspire," alone or in connection with other marks or names, as a trademark or in offering services or goods in or directed to Florida or Georgia.

20. This court retains exclusive jurisdiction over this matter to enforce the terms of this Consent Judgment and Permanent Injunction.

IT IS ORDERED AND ADJUDGED that pursuant to this Consent Judgment and Permanent Injunction, final judgment is hereby entered in favor of the Plaintiff and against the Defendant.

**ORDERED** in Orlando, Florida, on April 9, 2025.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record